**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **HERB KOZAK** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16-CV-352-JHP-JFJ** |
| | ) | |
| **INDEPENDENT SCHOOL** | ) | |
| **DISTRICT NO. 1 OF TULSA** | ) | |
| **COUNTY, OKLAHOMA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Before the Court are (1) a Motion for Summary Judgment filed by
Defendant Independent School District No. 1 of Tulsa County, Oklahoma ("School
District") (Dkt. 39) and (2) a Motion for Summary Judgment filed by Plaintiff
Herb Kozak ("Plaintiff") (Dkt. 41). After consideration of the briefs, and for the
reasons stated below, Defendant's Motion for Summary Judgment is **GRANTED**
and Plaintiff's Motion for Summary Judgment is **DENIED**.

## BACKGROUND

The following facts are undisputed. Plaintiff was hired by the School
District as a special education teacher, and he was placed on a temporary teacher
contract for the 2015-2016 school year. (Dkt. 39, at 2 (School District's
Undisputed Material Fact No. 1)). At a new teacher roundtable event on August

1

12, 2015, Plaintiff made an inappropriate joke in front of a school administrator, namely, that he had just been taken off the "registered sex offender list." (Dkt. 39, at 2 (School District's Undisputed Material Fact No. 3); Dkt. 39-1, at 44 (Recommendation for Dismissal of Herb Kozak)). Later that day, Plaintiff acknowledged in an email that his comment, although intended as a joke, was "not remotely funny." (Dkt. 39-2, at 35 (Email from Herb Kozak to Barbara Penrose)).

On August 18, 2015, Plaintiff was assigned as a special education teacher at Webster High School. (Dkt. 39, at 3 (School District's Undisputed Material Fact No. 4)). On August 18 or 19, 2015, Webster Principal Shelly Holman overheard Plaintiff speaking harshly and loudly to the office secretaries.[1] (Dkt. 39-4 (Declaration of Shelly Holman)). Ms. Holman went out of her office to ask Plaintiff if there was a problem, and Plaintiff angrily complained about his placement at Webster. (*Id.*). Ms. Holman advised Plaintiff it was unacceptable for him to speak to the school secretaries in a disrespectful manner, and Plaintiff responded by stating words to the effect of, "It appears I am not wanted here," and leaving the school office. (*Id.*).

---

[1] Plaintiff asserts this incident took place on August 18, 2015. (Dkt. 40, at 2). The School District's evidence suggests the incident occurred on August 19, 2015. (*See* Dkt. 39-1, at 44 (Recommendation for Dismissal of Herb Kozak); Dkt. 39-4 (Declaration of Shelly Holman)). However, whether this incident occurred on August 18 or August 19 is immaterial to the Court's conclusion, as it is clear it occurred while Plaintiff was working as a teacher at Webster. Therefore, determination of the precise date is unnecessary.

On August 27, 2015, a lightning alert was broadcast over Webster's intercom system, which required teachers to have students make class changes by going through the building instead of walking outside. (Dkt. 39, at 3 (School District's Undisputed Material Fact No. 6)). Webster Dean of Students Walter Smith then spoke with several students, who stated they had just come from Plaintiff's classroom and Plaintiff had allowed them to walk outside. (*Id.*). Mr. Smith went to see Plaintiff about the lightning alert announcement, and Mr. Smith could not follow Plaintiff's explanation for not complying with the announcement. (*Id.*). Mr. Smith explained the school's lightning alert policy to Plaintiff, at which point Plaintiff became angry and walked away. (*Id.*; Dkt. 39-1, at 44 (Recommendation for Dismissal of Herb Kozak)).[2]

On August 28, 2015, Webster Assistant Principal Ryan Buell performed a walkthrough observation of Plaintiff's class. (Dkt. 39, at 4 (School District's Undisputed Material Fact No. 7)). Following the observation, Mr. Buell sent Plaintiff a "pushpin email," an informal evaluation tool used to notify Plaintiff of areas that needed improvement. (*Id.*). That afternoon, Plaintiff responded to the email by stating, "Thank-you for the feedback. You have made my weekend."

---

[2] Plaintiff does not dispute this incident occurred as the School District represents. He does assert in his Response brief that he did not hear the lighting alert broadcast and his classroom phone was broken, which made it impossible for him to find out what was announced. (*See* Dkt. 40, at 4). However, whether or not Plaintiff was able to hear or confirm the announcement is immaterial to the Court's conclusion with regard to Plaintiff's race discrimination claim.

(*Id.*; Dkt. 39-2, at 39 (Email from Herb Kozak to Ryan Buell); Dkt. 39-5 (Declaration of Ryan Buell)).

A short time later, Plaintiff approached Mr. Buell outside Mr. Buell's office, where Mr. Buell was making copies. (Dkt. 39, at 4-5 (School District's Undisputed Material Fact No. 8)). Plaintiff spoke loudly to Mr. Buell, and Mr. Buell asked Plaintiff to speak to him inside his office. (*Id.*). Inside Mr. Buell's office, the two briefly discussed the areas of Mr. Buell's concern, and Plaintiff became upset over the evaluation. (*Id.*). At some point, Plaintiff took out his classroom keys and offered them to Mr. Buell, saying words to the effect of, "Do you just want to fire me?" (*Id.*). Mr. Buell further attempted to discuss the evaluation, and Plaintiff indicated he was not interested in evaluations. (*Id.*). Plaintiff continued to argue with Mr. Buell, and Plaintiff finally stated words to the effect of, "Oh, I see, I'm a black man, I'm just a boy." (*Id.*; Dkt. 39-5 (Declaration of Ryan Buell)). Plaintiff then left Mr. Buell's office area and went to his classroom.[3]

---

[3] The Court here relays the undisputed events of August 28, 2015, as presented by the School District. In his Response, Plaintiff presents the events of August 28 in a slightly different sequence and manner than the School District represents, but he does not dispute that (1) he sent a sarcastic email to Mr. Buell in response to the pushpin email, (2) he confronted Mr. Buell about the evaluation in a hostile manner, or (3) he asked Mr. Buell to fire him. (*See* Dkt. 40, at 6-8). Plaintiff relays his final comment to Mr. Buell as, "Believe it or not I'm a black man, and I will not be treated like your boy." (*Id.* at 8).

Mr. Buell immediately called Ms. Holman, who was off-site, and recounted Plaintiff's hostile and insubordinate behavior toward him. (Dkt. 39, at 5 (School District's Undisputed Material Fact No. 9)). Ms. Holman then contacted her supervisor at Human Capital for guidance on how to address Plaintiff's conduct. (Dkt. 39, at 5 (School District's Undisputed Material Fact No. 10)). After consulting with Human Capital, Ms. Holman arranged for campus security to escort Plaintiff from his classroom to her office so that she could speak with Plaintiff by telephone from her office. (Dkt. 39, at 5 (School District's Undisputed Material Fact No. 11)). During the conference call, Ms. Holman told him she would not tolerate his behavior toward Mr. Buell, and she asked him to gather his personal belongings and leave the school. (Dkt. 39, at 6 (School District's Undisputed Material Fact No. 12)). Ms. Holman directed Plaintiff to report on Monday, August 31, 2015, for a meeting with administrators and supervisors. (*Id.*). After the call, three campus officers escorted Plaintiff back to his classroom to retrieve his personal belongings and then to his car. (Dkt. 39, at 6 (School District's Undisputed Material Fact No. 13)).

On Monday, August 31, 2015, Plaintiff called in sick and did not report for the meeting with Ms. Holman or other administrators regarding his conduct. (Dkt. 39, at 6 (School District's Undisputed Material Fact No. 14)). Later that day, an

unknown person called in a bomb threat to Webster High, and a school employee identified Plaintiff as the possible caller. (*See* Dkt. 40, at 12; Dkt. 45, at 4). On September 2, 2015, Plaintiff's employment with the School District was suspended with pay. (Dkt. 39, at 8 (School District's Undisputed Material Fact No. 21)). On September 8, 2015, Superintendent of Schools, Dr. Deborah A. Gist, recommended Plaintiff's dismissal to the School District's Board of Education. (Dkt. 39, at 8 (School District's Undisputed Material Fact No. 22)). In the recommendation, Dr. Gist stated the grounds for cause for Plaintiff's dismissal were:

> (1) using poor judgment; (2) insubordination; (3) repeated violation of District policy and procedures by acting in a manner that was unprofessional, uncivil, and aggressive toward an administrator and staff; (4) engaging in unacceptable/disruptive behavior interfering or reasonably calculated to interfere with the peaceful conduct of the District; (5) failing to follow safety procedures regarding students; (6) engaging in conduct which adversely affects the Superintendent's trust in Mr. Kozak to act appropriately with District staff, students and parents; and (7) best interest of the District.

(Dkt. 39-1, at 42 (Recommendation for Dismissal of Herb Kozak)). The recommendation also cited several School Board and School District policies which Plaintiff had violated and set forth the underlying facts that formed the basis for dismissal. (*Id.* at 42-46). Those facts included (1) the inappropriate statement made at the new teacher roundtable on August 12, 2015; (2) the inappropriate conduct toward Webster office staff on August 19, 2015; (3) the failure to comply

with the lightning alert protocols on August 27, 2015; and (4) unprofessional conduct after receiving a pushpin on August 28, 2015. (*Id.* at 44-46). The bomb threat was not mentioned in the recommendation.

On September 22, 2015, the School District notified Plaintiff of the recommendation for his dismissal and notified him the Board of Education would hold a hearing on October 14, 2015, to consider the recommendation. (Dkt. 39, at 9 (School District's Undisputed Material Fact No. 23)). The School District notified Plaintiff of his right to appear at the hearing, to be represented by counsel, to question the administration's witnesses, and to present his own witnesses, evidence, or statement. (*Id.*).

Plaintiff appeared at the hearing held on October 14, 2015, but he was not represented by counsel. (Dkt. 39, at 9 (School District's Undisputed Material Fact No. 24)). Immediately prior to the hearing, Plaintiff was informed that he had been cleared with regard to any involvement in the Webster bomb threat. (*See* Plaintiff Deposition, 58:12-22). At the hearing, Plaintiff did not object to the evidence the School District submitted. (*Id.*). Plaintiff testified on his own behalf and did not present any evidence. (*Id.* at 9-10). After hearing the evidence, the Board of Education deliberated and voted to adopt the findings of fact and conclusion submitted by Superintendent Gist, thereby terminating Plaintiff's employment with

the School District.  (Dkt. 39, at 10 (School District's Undisputed Material Fact No. 25)).

Plaintiff filed a Charge of Discrimination with the EEOC on November 10, 2015, in which he alleged discrimination based on color against the School District, occurring between August 28, 2015, and October 14, 2015.  (Dkt. 39-6 (EEOC Charge of Discrimination)).  On March 17, 2016, the EEOC issued a Dismissal and Notice of Rights letter, in which it did not find a violation of the statutes and notified Plaintiff of his right to sue.  (Dkt. 39-7 (Dismissal and Notice of Rights)).  Plaintiff filed suit against the School District on June 15, 2016, based on alleged wrongful termination that occurred on or about August 28, 2015.  (Dkt. 1).  The EEOC Complaint alleges Plaintiff is a "[m]ixed race (White-Black)" man. (*Id.*).  Plaintiff further alleges that the School District and its employees "created a hostile workplace for me and conspired to wrongfully terminate me because of my mixed race ethnicity."  (*Id.*).  Plaintiff raises a single claim of discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2.[4]

Mr. Buell and Ms. Holman have both submitted declarations stating that, prior to August 28, 2015, neither had seen any documentation that Plaintiff was

---

[4] Plaintiff previously attempted to amend his Complaint to add several additional claims and defendants (*See* Dkts. 10, 14).  The School District opposed Plaintiff's request to amend (*See* Dkt. 20).  On June 9, 2017, the Court denied Plaintiff's request to amend (Dkt. 30). Accordingly, Plaintiff's discrimination claim as alleged in the original Complaint is the only existing claim in this matter.

mixed race (White and Black/African-American) and had never been told by Plaintiff or anyone else that Plaintiff was mixed race. (Dkt. 39-5 (Declaration of Buell), ¶ 7; Dkt. 39-4 (Declaration of Holman), ¶ 10). Further, both Mr. Buell and Ms. Holman state in their respective declarations that they could not determine Plaintiff was mixed race based upon his appearance alone. (Dkt. 39-5 (Declaration of Buell), ¶ 7; Dkt. 39-4 (Declaration of Holman), ¶ 10). Both Mr. Buell and Ms. Holman state that none of the actions they took toward Plaintiff on August 28, 2015, or before or after that date, had anything to do with his mixed-race status. (Dkt. 39-5 (Declaration of Buell), ¶ 7; Dkt. 39-4 (Declaration of Holman), ¶ 10). Rather, Ms. Holman states her actions were "based solely upon [Plaintiff's] actions and conduct toward the Webster secretarial staff and his threatening and insubordinate conduct toward Mr. Buell." (Dkt. 39-4 (Declaration of Holman), ¶ 11). Likewise, Mr. Buell states his actions were "based solely upon [Plaintiff's] threatening and insubordinate conduct toward me in my office while I attempted to discuss with him my expectations for his classroom performance." (Dkt. 39-5 (Declaration of Buell), ¶ 8). Plaintiff has presented no evidence that Mr. Buell knew Plaintiff was mixed race prior to his statement that he was a "black man" on August 28, 2015. Plaintiff also has presented no evidence that Mr. Buell, Ms.

Holman, or anyone else at the School District made comments to Plaintiff regarding his mixed-race background.

On October 16, 2017, the School District filed a Motion for Summary Judgment. (Dkt. 39). On November 16, 2017, Plaintiff filed an untimely Response combined with an untimely Motion for Summary Judgment. (Dkts. 40, 41).[5] On November 30, 2017, the School District filed a Reply brief to its Motion for Summary Judgment. (Dkt. 44). On December 7, 2017, the School District filed a Response in Opposition to Plaintiff's Motion for Summary Judgment. (Dkt. 45). On December 12, 2017, without leave of Court, Plaintiff filed a surreply brief in opposition to the School District's Motion for Summary Judgment. (Dkt. 46).[6] The pending motions are fully briefed and ripe for review.

## DISCUSSION

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed.

---

[5] Pursuant to Local Civil Rule 7.2(e), Plaintiff had to file a response to the School District's motion within "twenty-one (21) days from the date the motion was filed," which made Plaintiff's response due on November 6, 2017. Further, pursuant to the Court's Scheduling Order, dispositive motions were due on October 16, 2017. (*See* Dkt. 33). Moreover, a motion combined with a response is prohibited by Local Civil Rule 7.2(e). The School District points out these violations in its briefing. Nonetheless, in the interest of allowing Plaintiff to fully litigate his claim on the merits, the Court accepts these late-filed documents and considers them.

[6] Pursuant to Local Civil Rule 7.2(h), supplemental briefs are not encouraged and may be filed "only upon motion and leave of Court." Plaintiff failed to comply with this requirement. However, the School District has not objected to Plaintiff's filing of a surreply. In the interest of giving Plaintiff the opportunity to fully litigate his claim, the Court accepts the surreply and will consider its substance.

R. Civ. P. 56(a). A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

However, a party opposing a motion for summary judgment may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 530 (10th Cir. 1994) ("Even though all doubts must be resolved in [the nonmovant's] favor, allegations alone will not defeat summary judgment.") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Moreover, "[i]n a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (citations omitted). Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

The Court further notes that, while *pro se* pleadings must be liberally construed and must be held to less stringent standards than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), a district court should not assume the role of advocate. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Moreover, even *pro se* plaintiffs are required to comply with the "fundamental requirements of the Federal Rules of Civil and Appellate Procedure," and the liberal construction to be afforded does not transform "vague and conclusory arguments" into valid claims for relief. *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. N.M.*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

## I. School District's Motion for Summary Judgment

In his Complaint, Plaintiff alleges the School District conspired to wrongfully terminate him and created a hostile work environment for him because of his "mixed race ethnicity" of White and Black (Dkt. 1). Plaintiff asserts the School District's discrimination against him is demonstrated by the following actions: (1) after making his mixed-race status known to Mr. Buell, Plaintiff was

escorted from his classroom to Ms. Holman's office and ultimately out of the building by three campus police officers (Dkt. 39-1 ("Plaintiff Deposition"), 39:18-41:7); (2) School District employees falsely implicated him in a fabricated bomb threat (*Id.* at 43:4-20); (3) Dr. Gist refused to communicate with him before issuing the recommendation for his dismissal, and the recommendation for his dismissal was made after Plaintiff made it known to Mr. Buell that he was mixed race (*Id.* at 25:21-26:4; 27:5-7; 43:21-44:13); and (4) the School District's Board of Education was biased against him because he had been accused of calling in a bomb threat to Webster (*Id.* at 95:6-96:5).

In addition, Plaintiff raises other general claims of race discrimination pertaining to a hostile work environment, specifically: (1) Mr. Buell failed to provide Plaintiff with his students' individualized educational plans ("IEPs") (Plaintiff Deposition, 69:25-70:18); (2) Ms. Holman failed to provide him online access to the students' IEPs (*Id.* at 36:13-19); and (3) Webster officials denied him access to a working phone in his classroom (*Id.* at 63:9-18).

In its Motion for Summary Judgment, the School District argues none of these allegations has any factual or legal foundation, and the School District is entitled to summary judgment on (1) Plaintiff's claim of wrongful termination

based on race discrimination and (2) any possible claim of a hostile work environment.

## A.  Race Discrimination Claim – Wrongful Termination

The Court first addresses Plaintiff's wrongful termination claim based on race discrimination.[7]  Because Plaintiff has presented no direct evidence of race discrimination, Plaintiff's Title VII claim is subject to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). This framework provides:  (1) the employee must carry the initial burden of establishing a *prima facie* case of discrimination; (2) then the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for the challenged action; and (3) then the employee bears the burden of proving the employer's

---

[7] As the School District notes, in his EEOC Charge of Discrimination, Plaintiff alleged discrimination based upon "color" discrimination and not "race" discrimination. (*See* Dkt. 39-6 (Charge of Discrimination)).  "A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC."  *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005) (citations omitted).  However, as the School District acknowledges, the Court should "liberally construe charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim."  *Jones v. U.P.S.*, 502 F.3d 1176, 1186 (10th Cir. 2007).  Although the terms "race" and "color" are distinct bases for discrimination on the EEOC charge form, Plaintiff's Charge of Discrimination references certain School District employees as "white" and references himself as "Black."  Plaintiff's description suggests that the EEOC's investigation would have encompassed a claim for discrimination based on race, despite Plaintiff's failure to check the "race" discrimination box.  *See Stephens v. City of Topeka, Kan.*, 33 F. Supp. 2d 947, 950-51 (D. Kan. 1999).  Therefore, Plaintiff has properly exhausted his race discrimination claim.

proffered reason is mere pretext for unlawful discrimination. *Id.* at 802-04; *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

### 1. Prima Facie Case

To establish a *prima facie* case of discrimination, Plaintiff must show: (1) he "belongs to a protected class"; (2) he "suffered an adverse employment action"; and (3) "the challenged action took place under circumstances giving rise to an inference of discrimination." *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007) (citing *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005)). In its Motion, the School District concedes for summary judgment purposes that Plaintiff's termination of employment by the School District's Board of Education constituted an adverse employment action. However, the School District argues that, based upon the undisputed facts, Plaintiff has not established the other two elements of a *prima facie* case—that he is a member of a protected class or that his dismissal took place under circumstances giving rise to an inference of discrimination.

### a) Member of a Protected Class

As the School District concedes, the proof required for a plaintiff to establish the *prima facie* element of membership in a protected class is slight. *See*, *e.g.*, *Wood v. Freeman Decorating Servs., Inc.*, 2010 WL 653764, at *4 (D. Nev. Feb.

19, 2010) (finding question of fact as to whether plaintiff was an American Indian for *prima facie* element of member of a protected class); *Greene v. Swain Cnty. P'ship for Health*, 342 F. Supp. 2d 442, 451-52 (W.D.N.C. 2004) (finding plaintiff's assertions to defendant that she was Native American prior to her termination was sufficient to establish that defendant had a reasonable basis to believe plaintiff was a member of a protected class) (citing *Perkins v. Lake Cnty. Dep't of Utilities*, 860 F. Supp. 1262 (N.D. Ohio 1994)). Here, Plaintiff testified at his deposition that he self-identifies as mixed race (White and Black/African-American), based on statements made to him by his now-deceased parents. (Plaintiff Deposition, 12:10-14:12). The School District argues such hearsay evidence is insufficient to raise a genuine issue of fact. However, it is undisputed that Plaintiff made it known to Mr. Buell prior to his termination that he identifies as Black/African-American. Therefore, at minimum, the School District had a reasonable basis to believe Plaintiff was a member of a protected class at the time of his termination. Plaintiff has raised a genuine issue of fact regarding this element of his *prima facie* case.

**b)** **Circumstances Giving Rise to an Inference of Discrimination**

Even though Plaintiff has met his burden regarding the first and second elements of his *prima facie* case for discrimination, his *prima facie* case fails on

the third element. Plaintiff presents no evidence to support any of his various allegations that his dismissal by the Board of Education had anything to do with his mixed-race status.

With respect to the incidents that occurred prior to the afternoon of August 28, 2015, the undisputed facts show that neither Mr. Buell nor Ms. Holman knew of Plaintiff's mixed-race status until the afternoon of August 28, 2015, when Plaintiff told Mr. Buell he was a Black man. (*See* Dkt. 39, at 4-7 (School District's Undisputed Material Fact Nos. 8-9, 15, 18); Plaintiff Deposition, 28:16-19). The undisputed facts also establish that Plaintiff has no evidence, only speculation, that any official at the School District was aware of his mixed-race status until he mentioned his race to Mr. Buell. (*See* Plaintiff Deposition, 31:5-32:10).

Even after Plaintiff revealed his race to Mr. Buell on August 28, 2015, Plaintiff's allegation that he was thereafter targeted for dismissal because of his race completely lacks evidentiary support. By contrast, the undisputed evidence shows that (1) Plaintiff was escorted by security officers on August 28, 2015, because of his hostile and insubordinate behavior toward Mr. Buell (*see* Dkt. 39, at 4-6 (School District's Undisputed Material Fact Nos. 8-13; Dkt. 39-4 (Holman Declaration), at 2-3); (2) Dr. Gist's recommendation for dismissal was based on Plaintiff's repeated misconduct (*see* Dkt. 39, at 8-9 (School District's Undisputed

Material Fact No. 22; Dkt. 39-1, at 42-46 (Recommendation for Dismissal of Herb Kozak); and (3) the Board of Education's decision to dismiss Plaintiff was based on Dr. Gist's recommendation, along with evidence and statements presented during the hearing, not any racial bias or alleged connection to the Webster bomb threat. Further, Plaintiff has only conjecture to support his allegation that the School District fabricated a bomb threat and falsely implicated him as the caller, in order to have grounds to terminate his employment after he revealed his mixed race.[8] There is also no evidence to support the allegation that Dr. Gist refused to communicate with Plaintiff prior to issuing her recommendation because of his mixed race. Therefore, Plaintiff fails to establish a *prima facie* case for race discrimination as a matter of law.

### 2. Legitimate Nondiscriminatory Reasons for Plaintiff's Dismissal

Even if Plaintiff could meet his *prima facie* case for discrimination, the undisputed facts establish that the School District had legitimate,

---

[8] For example, in his Surreply brief Plaintiff concludes Webster employees fabricated the bomb threat, because it was called into Webster High on August 31, 2015—the first school day after Plaintiff announced his mixed-race status—and during the school lunch time. Plaintiff also speculates that the school clerk, who took the bomb threat call and apparently stated the caller sounded like Plaintiff, was "pointedly racist" for identifying Plaintiff, whom she barely knew, as the possible caller. (Dkt. 46, at 4). However, Plaintiff points to no evidence suggesting that the bomb threat was a fabrication, that the clerk's identification of Plaintiff had anything to do with his race, or that his dismissal had anything to do with the bomb threat. In any event, it is evident that Plaintiff was cleared of any potential charges in the bomb threat prior to Plaintiff's termination hearing. (*See* Plaintiff Deposition, 58:12-22). Therefore, Plaintiff has not raised a genuine issue of fact regarding this claim.

nondiscriminatory reasons for Plaintiff's dismissal from his employment with the District. (*See* Dkt. 39-1, at 42-46 (Recommendation for Dismissal of Herb Kozak)). It is undisputed that, even prior to Plaintiff's statement to Mr. Buell that he was mixed race, Plaintiff demonstrated inappropriate and insubordinate conduct on several occasions. (Dkt. 39, at 2-5 (School District's Undisputed Material Fact Nos. 3, 5-8)). Though Plaintiff attempts in his Response brief to explain or provide further context regarding the incidents resulting in his dismissal, he does not deny that any of them occurred. (*See* Dkt. 40, at 1-12). Accordingly, the School District has met its burden.

### 3. Pretext for Discrimination

Moreover, Plaintiff fails to rebut those non-discriminatory reasons for his dismissal with any evidence that they were mere pretext for racial discrimination. Plaintiff may establish pretext "by showing the [School District's] proffered non-discriminatory explanations for its actions are 'so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude [they are] unworthy of belief.'" *Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010) (quoting *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1197 (10th Cir. 2008)). When making the determination whether the proffered reason for an adverse decision was "pretextual," the Court must "'examine the facts as they appear *to the*

19

*person making the decision*,'" and the Court must "'not look to the plaintiff's subjective evaluation of the situation.'" *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1044 (10th Cir. 2011) (quoting *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1166 (10th Cir. 2007) and *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1130 (10th Cir. 1998)).

Here, Plaintiff offers no evidence that the proffered reasons for his dismissal were mere pretext or that his mixed-race status had any bearing on the School District's decisions about his employment. Plaintiff speculates that Dr. Gist and the Board of Education were influenced by racial prejudice in deciding to recommend his termination and to terminate his employment, respectively, but he has no evidence to support the conjecture. (*See* Plaintiff Deposition, at 39:3-17, 43:21-44:13, 44:20-25).

Moreover, to the extent Plaintiff asserts a fabricated bomb threat accusation was the true reason for his dismissal, the undisputed facts demonstrate that (1) the recommendation for Plaintiff's dismissal made no reference to the Webster bomb threat and (2) no evidence regarding the bomb threat was presented to the Board of Education during his due process hearing. (*See* Dkt. 39-1, at 44 (Recommendation for Dismissal of Herb Kozak; Dkt. 39-2 (Declaration of Cindy Hutchings, List of Exhibits, Minutes of Special Meeting of Oct. 14, 2015); Plaintiff Deposition, at

32:21-33:20; 38:5-22). Further, in his Response brief Plaintiff asserts he resigned from working at the School District on August 19, 2015, but the School District persuaded him to rescind his resignation, which proves that his behavior prior to that date was not as unacceptable or disrespectful as the School District would claim. (*See* Dkt. 40, at 3-4). Even if these communications occurred as Plaintiff represents, Plaintiff still provides no evidence, only his subjective belief, that the stated reasons for his dismissal were so weak, incoherent, or inconsistent that they were mere pretext for discrimination.

In addition, Plaintiff's more general allegations of discrimination do not raise an issue of fact as to pretext. Plaintiff posits that Mr. Buell refused to provide him with his students' IEPs, that Ms. Holman denied him access to his students' IEPs on the School District's system, and that he was denied a working classroom phone, all because of his mixed-race status. However, the undisputed facts show that neither Ms. Holman nor Mr. Buell was aware that Plaintiff was mixed race prior to the afternoon of August 28, 2015. (*See* Dkt. 39, at 5-7 (School District's Undisputed Material Fact Nos. 8-9, 15, 18); Plaintiff Deposition, 28:16-19). Even if, as Plaintiff asserts, School District officials had been aware of his mixed-race status at an earlier date, Plaintiff has no evidence to suggest the stated reasons for

his dismissal were mere pretext for race discrimination.[9]  Without more, Plaintiff's personal belief that his mixed-race status factored into his dismissal is insufficient to create a genuine issue of material fact for purposes of summary judgment.  *See Aramburu v. The Boeing Co.*, 112 F.3d 1398, 1408 n.7 (10th Cir. 1997) ("[S]ubjective belief of discrimination is not sufficient to preclude summary judgment.").

\*\*\*

Plaintiff provides no evidence in support of his entirely speculative assertions of race discrimination or in contradiction to the School District's evidence.  *See Branson v. Price River Coal, Co.*, 853 F.2d 768, 772 (10th Cir. 1988) (noting "mere conjecture" is not sufficient to overcome a motion for summary judgment).  Accordingly, the School District is entitled to summary judgment in its favor with respect to Plaintiff's claim of wrongful termination based on race discrimination.

---

[9] In his Response (Dkt. 40, at 1-12), Plaintiff identifies various reasons why administrators at Webster should have known he was racially mixed prior to August 28, 2015.  First, Plaintiff refers to the EEO Voluntary Data Sheet attached to his application for employment with the School District, in which he identified his "Racial Group" as "White/Caucasian" and "Black/African-American."  (*See* Dkt. 40, at 2, 22 (Plaintiff's Exhibit 1)).  Second, Plaintiff describes an interaction between himself and a School District Human Capital Manager in June of 2015, in which the Human Capital Manager suggested Plaintiff was Jewish, and Plaintiff corrected him and stated he was Black and White.  (Dkt. 40, at 2).  Third, Plaintiff states his appearance "can be construed as racially mixed," and he "has been questioned many, many times about his racial composition."  (*Id.* at 9).  Fourth, Plaintiff told another teacher at Webster, Mrs. Fisher, that he was racially mixed.  (*Id.* at 10).

### B. Hostile Work Environment Claim

#### 1. Exhaustion

In the Complaint, Plaintiff appears to raise a hostile work environment claim based on his mixed race. As a threshold matter, the Court must examine whether this claim was properly exhausted at the administrative level. The School District contends that Plaintiff did not properly exhaust his administrative remedies as to such a claim. Plaintiff does not respond to this argument.

As the School District points out, Plaintiff must exhaust his administrative remedies for each of his claims in a charge before the EEOC as a condition precedent to filing suit. *See Gad v. Kansas State Univ.*, 787 F.3d 1032, 1040 (10th Cir. 2015) (discussing whether question of exhaustion is jurisdictional and "[h]olding [a specific exhaustion requirement to be] non-jurisdictional does not imply any diminution in the need for plaintiffs to comply with [the exhaustion] requirement," and a defendant "may still achieve the dismissal of a plaintiff's suit" based upon the failure to so comply). As discussed above, "[a] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005) (citations omitted). However, the Court should "liberally construe

charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim." *Jones v. U.P.S.*, 502 F.3d 1176, 1186 (10th Cir. 2007).

To set forth a hostile work environment claim, Plaintiff's charge should state facts asserting a workplace "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998) (quotation omitted). Construed liberally, Plaintiff's Charge of Discrimination does not set forth a hostile work environment claim. The Charge refers to the race of the individuals who took action against Plaintiff (Mr. Buell, Ms. Holman, and Dr. Gist) as "white" and it references actions allegedly taken against Plaintiff, including "demeaning" language from Mr. Buell, denial of Plaintiff's "articles of teaching," and "derogatory treatment." (*See* Dkt. 39-6 (EEOC Charge of Discrimination). Plaintiff refers to being escorted by police officers from his office to Mr. Buell's office, and off school premises, after stating to Mr. Buell that he was a Black man. (*Id.*). Plaintiff also refers to his being implicated in the Webster bomb threat. (*Id.*). Plaintiff alleges the discriminatory conduct occurred beginning on August 28, 2015, which was the date of the alleged "demeaning" language by Mr. Buell

and police escort, and ending on October 14, 2015, which was the date of the School Board meeting resulting in his termination of employment. (*Id.*).

These allegations do not come to alleging "severe or pervasive" discriminatory treatment such that Plaintiff's conditions of employment were altered. Therefore, the investigation of Plaintiff's discrimination claim based on "color" or "race" for wrongful termination could not reasonably have been expected to lead to a hostile work environment claim. *See Mitchell v. City and County of Denver*, 112 F. App'x 662, 667-68 (10th Cir. 2004) (dismissing hostile work environment claim for failure to exhaust administrative remedies).

## 2. Merits

Even if the Court were to conclude Plaintiff's Charge of Discrimination sufficiently set forth a hostile work environment claim, and such claim were therefore exhausted, the claim still fails on its merits. To establish a claim for hostile work environment, an employee must show that (1) a rational jury could find that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" and (2) a rational jury could infer from the evidence that the employee "was targeted for harassment because of [his] gender, race, or national origin. *Sandoval v. City of*

*Boulder, Colo.*, 388 F.3d 1312, 1326-27 (10th Cir. 2004) (quotation omitted). "General harassment if not racial or sexual is not actionable." *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994).

Here, Plaintiff has no evidence, only speculation, that he was "targeted for harassment" because of his mixed race. The undisputed facts establish that Plaintiff never heard any School District administrator or any other District employee refer to him by any racially derogatory name such as a "Black boy." (*See* Plaintiff Deposition, 31:5-10, 32:5-10; Dkt. 39, at 11 (School District's Undisputed Material Fact No. 28)). In his deposition, Plaintiff refers only to his subjective belief as proof that he was treated in a hostile or harassing manner because of his mixed race. (*See* Plaintiff Deposition, 29:15-30:21; 36:8-37:4; 39:3-40:24; 44:3-13; 63:12-22). As stated above with respect to Plaintiff's discrimination claim, the claimant's subjective belief alone is insufficient to overcome summary judgment. Accordingly, to the extent Plaintiff raises a viable claim for hostile work environment based upon his mixed race, such claim must fail as a matter of law. The School District is entitled to summary judgment on any such claim for hostile work environment.

## II.     Plaintiff's Motion for Summary Judgment

For the reasons explained above, the Court finds the School District is entitled to summary judgment in its favor on Plaintiff's claims.  In his Motion for Summary Judgment (Dkt. 41), Plaintiff asserts that he was wrongfully terminated by the School District because of racial discrimination.  (Dkt. 40, at 14).  Plaintiff elaborates on this assertion with speculative statements unsupported by any evidence.  Plaintiff fails to demonstrate through any evidence that his mixed-race status played any role in his alleged hostile treatment or his termination by the School District.[10]  Accordingly, summary judgment in Plaintiff's favor would be entirely inappropriate.  *See* Fed. R. Civ. p. 56(c) ("A party asserting that a fact cannot be . . . genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials."); LCvR 56.1(b) ("The brief in support of a motion for

---

[10] Plaintiff attaches to his Motion for Summary Judgment (as Exhibit 1) an EEO Voluntary Data Sheet, which Plaintiff asserts he submitted as part of his employment application with the School District.  (Dkt. 40, at 22).  On the Data Sheet, Plaintiff has checked the boxes for "White/Caucasian" and "Black/African-American" under the heading of "Racial Group." Plaintiff contends this Data Sheet proves that the School District was aware of his racial composition prior to his own statements to Mr. Buell on August 28, 2015.  (Dkt. 40, at 16-17).  Even assuming that School District officials or administrators reviewed this Data Sheet (which the School District disputes, *see* Dkt. 44, at 2-3), Plaintiff offers absolutely no evidence to establish that the alleged hostile treatment, the recommendation for his dismissal, or his termination from employment at the School District had anything to do with his mixed race.

summary judgment . . . shall begin with a section that contains a concise statement of material facts to which the moving party contends no genuine issue of fact exists. The facts shall be numbered and shall refer with particularity to those portions of the record upon which movant relies."); LCvR 7.2(j) ("Factual statements or documents appearing only in the brief shall not be deemed to be a part of the record in the case, unless specifically permitted by the Court.").

Because Plaintiff offers no evidence, only his personal belief and speculation, to support summary judgment in his favor, his request for summary judgment is denied.

## CONCLUSION

For the reasons detailed above, the School District's Motion for Summary Judgment (Dkt. 39) is **GRANTED,** and Plaintiff's Motion for Summary Judgment (Dkt. 41), is **DENIED**.

James H. Payne
United States District Judge
Northern District of Oklahoma